UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

S<small>HELAGH</small> W<small>ILLIAMS</small>,

    Plaintiff,

v.

D<small>ETROIT</small> P<small>UBLIC</small> S<small>CHOOLS</small>, <small>ET AL</small>.,

    Defendants.
_____/

Case No. 10-10856

S<small>ENIOR</small> U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

M<small>AGISTRATE</small> J<small>UDGE</small> R. S<small>TEVEN</small> W<small>HALEN</small>

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [38]**

Before the Court is Defendants' Motion for Summary Judgment [38]. On November 18, 2011, the Court heard argument on the Motion.

**I.     Background**

This case is a companion to a closed case, *Williams v. Detroit Public Schools, et al.*, 07-12862. Plaintiff's previous case settled in 2009. Plaintiff brings the instant case due to alleged breach of the settlement agreement through fraud and misrepresentation. Plaintiff also alleges retaliation and attempts to reinstate her allegations of racial discrimination and retaliation from her earlier settled case.

Plaintiff's claims are as follows: Plaintiff is a former teacher and principal. Plaintiff is caucasian. She began work with defendant Detroit Public Schools (DPS) in 1980 and became a principal in 2001. In her 2007 case Plaintiff claimed that she had been treated disparately from similarly-situated African-American employees. When her school was closing in 2005, Plaintiff applied for a position as a principal at other schools. She was not selected for a principal position. She asked senior DPS administrators why this was the case. In June 2005, one of the administrators

allegedly told Plaintiff that "Hispanic schools wanted Hispanic principals and black schools wanted black principals." Plaintiff filed a complaint with the Board of Education alleging racial discrimination in May 2006. Following the filing of her complaint with the Board of Education, Plaintiff applied for a number of additional principal positions but did not get any. Plaintiff alleged that Defendants actively sought out black principals displaced by school closings, while Plaintiff had not been approached despite her applications. Plaintiff brought federal discrimination and retaliation claims against DPS and the Board of Education under Title VII and 42 U.S.C. §1981, as well as corresponding state-law claims.

In April, 2009, the parties stipulated to dismissal of the case after reaching a settlement whereby the parties agreed, according to the explicit text of the settlement, to the "reinstatement of Shelagh Williams as Principal of Birney Elementary School." Plaintiff executed the final agreement on February 25, 2009. A stipulated order dismissing Plaintiff's claims with prejudice was entered on April 7, 2009.

In an earlier discussion and draft of the settlement agreement, Defendants had originally suggested that Plaintiff be placed at Henderson Upper Elementary School; this placement was tentatively agreed to on January 22, 2009. However, after this initial draft, Plaintiff spoke with Ines de Jesus, Associate Superintended of Human Resources for Defendant Detroit Public Schools. Ms. de Jesus informed the Plaintiff that Henderson Upper, where she was to be placed, was to be combined with Henderson Lower, another school. The two principals of these schools would be required to interview for the new principal position at the combined Henderson school. Ms. de Jesus informed Plaintiff that she did not want Plaintiff to have to interview for the position, and that the principal of Birney Elementary School ("Birney"), another school, would be retiring soon.

On February 25, 2009, Plaintiff executed the settlement agreement designating that she would be appointed the principal of Birney. This agreement was stipulated and entered by this court on April 7, 2009. On February 16, 2009, Plaintiff began working at Birney. The principal of Birney had not yet retired, but did so on April 1, 2009. Plaintiff remained the principal at Birney until its closure on June 30, 2009.

On March 2, 2009, the Governor of Michigan appointed Robert Bobb as Emergency Financial Manager of the Detroit Public School system. Bobb was given essentially unlimited power in his management of the school system, and his decisions did not have to be approved by the Board of Education or Superintendent. The Superintendent and Board had no influence or input on Bobb's decision regarding school closures. At Bobb's direction, in May 2009 Birney Elementary, which had previously not been considered for closure, was placed on a closure list and was closed on June 30, 2009. Bobb provided an affidavit to Defendants stating that he had no knowledge of the settlement agreement between Plaintiff and Defendants when he made his closure decisions, and did not receive input on said decisions from Defendants. Plaintiff did not dispute Bobb's lack of knowledge regarding her settlement with Defendants, and also did not dispute Defendants' claim that they had no knowledge that Birney Elementary would be closed when they agreed to place Plaintiff at Birney.

In May, Plaintiff, upon learning of the planned closure of Birney Elementary, e-mailed both the Superintendent of Detroit Public Schools and Robert Bobb, noting that her contract was not being renewed (along with thirty-two (32) other principals), and expressing her belief that DPS had bargained with her in bad faith. Plaintiff subsequently applied for several other positions as a principal but was not hired. Plaintiff chose to retire on July 1, 2009, rather than use her seniority to return to a teaching position.

3

Plaintiff alleges in the instant complaint, filed in March 2010, that her decision to accept a settlement offer that involved her placement as a principal at Birney Elementary was the result of fraud perpetrated by Defendants. Plaintiff alleges that, in her conversation with Ines de Jesus, de Jesus misled Plaintiff as to Defendants' purpose in offering her the position at Birney Elementary. Plaintiff also alleges retaliation for her past lawsuit, in the form of her inability to secure a position as a principal after the closure of Birney Elementary. Plaintiff also seeks to reinstate her past case involving federal race discrimination and retaliation claims and related state claims; Plaintiff alleges that the closure of Birney soon after her placement there constitutes breach of contract due to fraud.

**II.     Analysis**

**A.     Plaintiff's Present Suit - Breach of Contract, Misrepresentation, Fraud, Discrimination and Retaliation**

Plaintiff's claim for breach of contract, misrepresentation, fraud and retaliation center around Plaintiff's placement at Birney Elementary and its subsequent closure. Plaintiff alleges that she only agreed to placement at Birney because of the assurances of Ines de Jesus that Birney was "safer" than Henderson. Plaintiff relies on the argument that de Jesus' statement was made in bad faith, citing two pieces of evidence: First, that de Jesus admitted at deposition that she did not know if Birney was "safer" than Henderson in terms of closure, and second, that one of the Board of Education members, Anne Carter, testified that parents at Henderson Upper did not want the African-American principal there to be replaced, and that the Board decided to offer Plaintiff a position at Birney instead of Henderson because of their interest in retaining said principal.[1]

---

[1] Plaintiff seems to rely on Carter's testimony to cast doubt upon Defendants' reasoning for offering Plaintiff a position at Birney rather than Henderson. However, Plaintiff points out that Carter's testimony regarding parental input into the replacement of the principal at

4

Plaintiff relies on the alleged misrepresentation regarding the decision to offer her a position at Birney instead of Henderson for her claim of breach of contract. Plaintiff's claim ultimately fails because she cannot point to any adverse action other than the ultimate closure of Birney, a decision that was not made by Defendant and that was made without knowledge of Plaintiff's settlement.

**De Jesus' Testimony**

The crux of Plaintiff's argument regarding fraud and misrepresentation is that DPS employee Ines de Jesus lied to Plaintiff about Birney being "safer" than Henderson. Plaintiff has repeatedly claimed that de Jesus told Plaintiff that Birney Elementary was "safe" from closure. For instance, in her Response to Defendant's Motion for Summary Judgment, Plaintiff stated that "she [Plaintiff] was advised to report to Birney Elementary School because it was 'safe' from impending school closings," and was "falsely advised that Henderson was an 'unsafe' school and Birney was 'safe' from impending school closures." Defendants have argued in response that Plaintiff was placed at Birney instead of Henderson because of the pending combination of Henderson Upper and Henderson Lower.

Plaintiff's argument is not supported by the evidence. Plaintiff's own deposition, as well as the deposition of Ines de Jesus, contradict the argument that Plaintiff was told that Birney was "safer" than Henderson in terms of school closure. Plaintiff apparently bases her argument on the following exchanges between Plaintiff's counsel and Ines de Jesus during deposition:

Q: Did you think that schools that were consolidated or recently consolidated would

be safer than ones that hadn't been?

---

Henderson is not supported by the records of the School Board's meetings. This seems to undermine Plaintiff's reliance on Carter's testimony.

> A: I don't have enough information to make those determinations.
>
> Q: So you would say as a fair statement that you didn't have enough information to make an assessment of whether or not a school was safe or not at that time. Would that be fair?
>
> A: I made my – *when I said to Ms. Williams that I felt Birney was safer than Henderson, it was based on the fact that they were going to reconfigure Henderson, and when the process has been when they reconfigure a school, the leadership of that school has to interview and go through the process and there's chances that they might not be selected.*

Dep. of Ines de Jesus at 44-45 (emphasis added).

> Q: Okay. And you told her [Plaintiff] that Birney was a safe school?
>
> A: Uh-huh.
>
> Q: Is that a yes?
>
> A: Safer, yes.
>
> Q: Safer than Henderson, correct?
>
> A: Yes.

Dep. of Ines de Jesus at 57.

Based on this testimony, Plaintiff argued that she had been misled into thinking that Birney Elementary was "safe" from school closure. However, it is clear from the context of de Jesus' deposition that when she was referring to Birney as "safe," it was in the context of the planned reconfiguration of Henderson Elementary. Indeed, this is the only logical conclusion, given that neither Henderson nor Birney were on any planned closure lists at the time of the settlement with Plaintiff. It would not have made any sense for Ines de Jesus to advise Plaintiff as to which school

6

was safer based on school closure, because de Jesus had no reason to believe *either* school was likely to close - this decision would be made months later by the Emergency Financial Manager. This view is borne out by Plaintiff's own recollection of her conversation with Ines de Jesus:

> Q: Did she [Ines de Jesus] state anything else during the conversation?
>
> A: She indicated that going to Birney would be, you know, safer so I wouldn't have to interview for Henderson.
>
> Q: She said going to Birney would be safer so you didn't have to interview for Henderson?
>
> A: For Henderson. Didn't want me to interview anymore.
>
> Q: And she said Birney was safer?
>
> A: Well, it was safer than Henderson because I wouldn't have to interview.
>
> Q: Did she say anything else regarding why Birney was safer?
>
> A: That I would – just that I would start April 1st and there would be no problems.
>
> Q: Did Ms. de Jesus give you any guarantee that Birney Elementary would never close?
>
> A: She never said it would never close.

Dep. of Shelagh Williams (2010) at 22-23.

Plaintiff repeatedly confirms in her deposition that Ines de Jesus assured her that Birney was safer than Henderson *in the context of Henderson's planned reconfiguration.* There was no discussion of impending school closures. Plaintiff's allegation that she was offered Birney as a placement and accepted said placement because it was safe from closure is therefore not supported by the evidence.

7

**Defendants' Alleged Ulterior Motive**

Given that Plaintiff does not allege, much less provide evidence, that school officials knew of the closure of Birney Elementary prior to offering Plaintiff a position as principal, Plaintiff cannot demonstrate fraud through the subsequent closure of Birney. Rather, Plaintiff argues that the reason given to her when she was offered the placement at Birney Elementary rather than Henderson, was pretextual.

Defendants state that the reason that Plaintiff was ultimately offered a position at Birney Elementary was due to the desire of DPS to have Plaintiff avoid the interview process that would take place when Henderson Upper was combined with Henderson Lower. According to evidence presented by both Plaintiff and Defendant, Henderson Upper and Lower were, in fact, combined. In addition, Plaintiff *was* placed as a principal at Birney Elementary School, and has not alleged any dissatisfaction with said placement prior to the closure of the school. Thus, it bears noting that Plaintiff's ultimate complaint is not that she was placed at Birney Elementary, but rather that she was placed at Birney Elementary, and that Birney Elementary was subsequently closed. However, as has already been established, Defendants played no role in this closure. Thus, Defendants' motivation for offering Plaintiff at Birney Elementary is immaterial, as it is not the root of Plaintiff's complaint.

Nevertheless, Plaintiff notes that Anne Carter, a school board member, testified that one of the reasons Defendants chose to offer Plaintiff a position at Birney rather than Henderson was to avoid displacing an African-American Assistant Principal, George Goff, who was currently at Henderson and who parents apparently wanted to retain at the school and eventually have as a principal at the combined Henderson school.

Plaintiff's argument is not persuasive. Plaintiff attempts to argue that she was discriminated against in favor of Mr. Goff. However, Plaintiff was never formally offered a position at Henderson; rather, she was offered, and accepted, a placement as the principal of Birney Elementary School. Plaintiff cannot identify how her placement at Birney Elementary School was an "adverse action" required to demonstrate discrimination; Plaintiff's only complaint about Birney Elementary School was that it was subsequently closed. Moreover, Defendants' stated reason for placing Plaintiff at Birney, to avoid the combination of Henderson Upper and Henderson Lower, was supported by later events. The two schools were combined, and Mr. Goff, who Plaintiff alleges Defendants had conspired to retain at Henderson, was ultimately not awarded the principal position at Henderson, and in fact no longer works at the school in any capacity. Finally, it is unclear how Defendants' apparent interest in respecting the opinion of parents in relation to retaining Goff would demonstrate discriminatory intent, even if this interest played a role in Defendants' ultimate decision to offer Plaintiff at position at Birney Elementary School.

**Breach of Contract**

Plaintiff alleged in her response to Defendants' motion that "[t]he parties agreed Williams would be reinstated to Henderson Elementary School. However, days before reinstatement, she was advised to report to Birney Elementary School because it was "safe" from impending school closings." Plaintiff claims her placement at Henderson Elementary was "offered and accepted." Essentially, Plaintiff argues that the tentative settlement agreement discussed with the Defendants was a binding contract.

The undisputed facts of the case do not support Plaintiff's claim. Plaintiff was not "advised to report" to Birney Elementary - she agreed to accept a settlement offer that placed her at said school. Plaintiff was not told that Birney was safe from school closings. Plaintiff's attempt to cast

9

the initial discussion of a position as a principal at Henderson as an offer that was accepted is belied by the final settlement signed by Plaintiff and entered as a stipulated settlement agreement in Plaintiff's previous case before this Court, which specifically states that "[t]he Agreement represents the entire agreement of the Parties and *supersedes any previous understandings or agreement, oral or written. . . .*" Plaintiff raises issues regarding whether the school board originally voted to approve her placement at Henderson rather than Birney, relying once again on School Board Member Anne Carter, who testified that she thought the settlement she had voted on was to have Plaintiff originally placed at Birney, and then transferred to Henderson later; however, such an arrangement was apparently never contemplated by the parties, was not discussed by Plaintiff in her own deposition, and is not reflected in the settlement language.

### Retaliation

Plaintiff's claim for retaliation is also based on the closure of Birney Elementary. Specifically, Plaintiff claims that Defendants retaliated against her by "[p]lacing Plaintiff into a principal position under the guise of 'reinstatement' only to then close the school, negating the reinstatement and then refusing to place Plaintiff elsewhere . . . [and] forcing Plaintiff to retire . . . ." Plaintiff does not dispute that the closure of Birney was made without any knowledge of Plaintiff's settlement, and by Emergency Financial Manager Robert Bobb. This undercuts most of the claim, as Defendants could not have retaliated against Plaintiff by closing Birney Elementary if Defendants were not responsible for its closure. Plaintiff's remaining claim of retaliation is based around what Plaintiff characterizes as "refusal to place Plaintiff elsewhere" and "forcing Plaintiff to retire."

In terms of placing the Plaintiff elsewhere, Plaintiff does not allege or provide evidence that Defendants discriminated against her in her application for a position as a principal at other schools

10

after the closure of Birney Elementary, nor does she allege or present evidence that she was unable to find a position as a principal because of her past lawsuit. Further, the settlement agreement contained no requirement that Defendants find Plaintiff another placement if Birney Elementary was closed. Plaintiff complains that "[a]n employer who waits for a legal, legitimate reason to fortuitously materialize and then uses it to cover up for retaliation is engaged in the very definition of pretext," and that Defendants were "indifferent to her complaints of retaliation after Birney was closed." Plaintiff presents no evidence that she was discriminated against or retaliated against in the later round of hiring. Further, testimony indicates that other principals also had to retire because they could not find positions after the closure of thirty-three (33) schools by the Emergency Financial Manager. Plaintiff's only evidence of retaliation is a claim in her deposition that she had heard that four African-American principals who had been displaced were re-hired; without additional information, however, this claim is not sufficient to create a genuine issue of material fact.

In terms of the allegation that Plaintiff was "forced" to retire, Plaintiff does not provide evidence, or even allege beyond the statement that she was forced to retire, that any pressure was placed upon her to retire by Defendants. Instead, it appears that Plaintiff chose to retire rather than using her seniority to assume a teaching position when it became clear that she would not be hired as a principal.

**Summary Judgment as to Plaintiff's Post-Settlement Claims**

There are no relevant facts in dispute related to Plaintiff's claims stemming from post-settlement events. It is clear that an agreement was made that settled Plaintiff's previous case, and that agreement involved placement of Plaintiff as principal at Birney Elementary School. Through unfortunate and unrelated action by the Emergency Financial Manager, that school was closed and

11

Plaintiff lost her job. Plaintiff does not present any facts that support a claim of breach of contract, fraud, misrepresentation, discrimination, or retaliation.

## B.     Claims Arising From Plaintiff's Previous Lawsuit

Plaintiff also seeks to "reinstate" her claims from her previous lawsuit. Said claims were dismissed with prejudice according to the stipulated order agreed to by Plaintiff and Defendants and entered by this court. Plaintiff argues that she should be able to reinstate the claims because Defendants only induced her to settle based upon fraud and misrepresentation. While a contract is voidable and unenforceable if procured through fraud or misrepresentation, there are no material facts in dispute in this case to lend credence to Plaintiff's claims of breach of contract, fraud, and misrepresentation. Thus, Plaintiff's claims regarding reinstatement of her previous suit, based on claims of fraud, are moot. Even were Plaintiff's claims not moot, however, they would still fail.

**Failure to Tender Back Consideration**

When a party seeks to void a contract that provided for waiver of federal legal claims, "[t]he tender back of consideration received for signing a release is an absolute prerequisite to avoidance of the release under Michigan and federal law even where . . . the plaintiff alleges that he was fraudulently induced to sign the release, or that the opposing party concealed information prior to the release." *Samms v. Quanex Corp.*, 99 F.3d 1139 (6th Cir. 1996) (unpublished); *see also Bittinger v. Tecumseh Products Co.*, 83 F. Supp. 2d 851, 871 (E.D. Mich. 1998), *aff'd*, 201 F.3d 440 (6th Cir. 1999) (per curiam). Plaintiff agreed to dismissal of her claims against Defendants in return for consideration: Appointment as principal of Birney Elementary and payment of attorney's fees. Defendants note that Plaintiff has not tendered back either her salary as a principal or the payment of her attorney's fees to Defendants.

Plaintiff, in her response, cites a handful of cases that "have determined that enforcing the ratification and tender-back doctrines defeat the remedial purposes of federal civil rights statutes." However, the cases Plaintiff cites are district court cases from Delaware, New Mexico, and North Dakota and are not persuasive to this Court. Plaintiff further argues that Defendants never asked for the return of consideration, and did not indicate what consideration Plaintiff had retained that could be returned. Defendants clearly indicated in their motion that the consideration retained by Plaintiff is her principal's salary and the cost of her attorney's fees which was paid by Defendants. As to the argument that Defendants did not ask for the return of consideration, in *Samms v. Quanex Corp.* the Sixth Circuit seems to place the burden on the Plaintiff; it is the Plaintiff who must "tender back" consideration. There is no requirement that Defendants request that Plaintiff return consideration. this would not be logical given that said tendering is a "prerequisite" to avoiding release; it is Plaintiff, not Defendants, who seek release from a contractual term, and thus it would seem incumbent on Plaintiff to return consideration prior to seeking reinstatement of her claims. Plaintiff thus remains bound to the agreement made with Defendants.

**Plaintiff's Failure to Move for Relief Under Rule 60**

Under Fed. R. Civ. P. 60(b), a party is required to move for relief from a prior order imposing judgment or dismissing claims. A court may grant such relief for a number of reasons, including that the prior order or judgment was obtained through fraud. However, under Fed. R. Civ. P. 60(c)(1), such a motion must be made "within a reasonable time" and, if for reasons of fraud, "no more than a year after the entry of the judgment or order."

Proof of fraud in procuring the settlement is a prerequisite to setting aside a judgment and order according to Rule 60. There are no material facts in dispute in this case to lend credence to

13

Plaintiff's claims of breach of contract, fraud, and misrepresentation. Plaintiff's attempt to reinstate her previous lawsuit thus also fails.

## III. Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED.**

All matters having been resolved by resolution of the instant motion, the case is hereby DISMISSED.

**SO ORDERED**.

|  |  |
|---|---|
|  | s/Arthur J. Tarnow |
|  | Arthur J. Tarnow |
| Dated: December 6, 2011 | Senior United States District Judge |

---

## CERTIFICATE OF SERVICE

I hereby certify on December 6, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on December 6, 2011: **None.**

s/Michael E. Lang
Deputy Clerk to
District Judge Arthur J. Tarnow
(313) 234-5182